Ross D. Tillman
John M. Newman
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406)543-6646
Facsimile:  (406) 549-6804
rtillman@boonekarlberg.com
jnewman@boonekarlberg.com
*Attorneys for Defendant James Yeager*
*d/b/a Jim Yeager Outfitters*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHARLES P. McJUNKIN, deceased, by and through his executrix and personal representative, RHETT McJUNKIN, and RHETT McJUNKIN, executor and personal representative, on behalf of the heirs of CHARLES P. McJUNKIN, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES YEAGER d/b/a JIM YEAGER OUTFITTERS, <br><br> Defendant. | CV 17–12–BLG–TJC <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………1

BACKGROUND………………………………………………………...1

LEGAL STANDARD.................................................................................2

    A.     Summary judgment……………………………………………...2

    B.     Applicable law……………………………………………………..3

    C.     Challenging the constitutionality of a statute under Montana law…...3

ARGUMENT…………………………………………………………………4

    A.     The Act is not unconstitutionally vague on its face or as applied……5

         1.     The Act is constitutional on its face…………………………..5

             a.     The definition of "inherent risk"………………………5

             b.     Inherent risk and the threshold legal question of duty...12

         2.     The Act is constitutional as applied to Plaintiffs and to McJunkin…………………………………………………………..16

    B.     The Act does not deny recreationists equal protection under the Montana Constitution……………………………………………18

         1.     Legal framework……………………………………………..19

         2.     The Act, when compared with other recreational activity statutes in Montana, does not create different classes of recreationists……………………………………………………20

         3.     The Act does not treat recreationists differently than members of the public with respect to legal redress……………………22

4.      Even assuming the Act does treat recreationists differently, the distinction is rationally related to a legitimate government purpose……………………………………………………...24

CONCLUSION……………………………………………………………………27

# TABLE OF AUTHORITIES

**Federal Cases**                                                              **Page(s)**

*Adickes v. S.H. Kress & Co.,*
   398 U.S. 144 (1970) ........................................................................... 3

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ........................................................................... 3

*G.K. Ltd. Travel v. City of Lake Oswego,*
   436 F.3d 1064 (9th Cir. 2006) ........................................................... 6

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ........................................................................... 6

*Hoffman Estates v. Flipside, Hoffman Estates,*
   455 U.S. 489 (1982) ......................................................................... 16

*Kopeikin v. Moonlight Basin Mgmt., L.L.C.,*
   90 F. Supp. 3d 1103 (D. Mont. 2015) ............................................. 11

*Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l L.L.C.,*
   632 F.3d 1056 (9th Cir. 2011) ........................................................... 3

*New Orleans v. Dukes,*
   427 U.S. 297 (1976) ......................................................................... 20

*Tolan v. Cotton,*
   134 S. Ct. 1861 (2014) ....................................................................... 3

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ........................................................................... 8

**State Cases**

*Bieber v. Broadwater County,*
   759 P.2d 145 (Mont. 1988) ......................................................... 20, 25

*Blehm v. St. John's Lutheran Hosp., Inc.,*
   246 P.3d 1024 (Mont. 2010) ........................................................... 19

*Brewer v. Skilift, Inc.,*
   762 P.2d 226 (Mont. 1988) ............................................................. 15

*Broers v. Mont. Dep't of Revenue*,
    773 P.2d 320 (Mont. 1989) ................................................................. 6

*Busta v. Columbus Hosp*,
    916 P.2d 122 (Mont. 1996) ............................................................... 12

*Emanuel v. Great Falls Sch. Dist.*,
    209 P.3d 244 (Mont. 2009) ........................................................ 12-13

*Estate of McCarthy v. Mont. Second Judicial Dist. Court*,
    994 P.2d 1090 (Mont. 1999) ............................................................. 4

*Goble v. Mont. State Fund*,
    325 P.3d 1211 (Mont. 2014) ............................................................. 4

*Gourneau v. Hamill*,
    311 P.3d 760 (Mont. 2013) ............................................................. 13

*Hammer v. Justice Court*,
    720 P.2d 281 (Mont. 1986) ............................................................. 23

*In re Custody & Parental Rights of D.S.*,
    122 P.3d 1239 (Mont. 2005) .................................................... 6, 7, 10

*Linder v. Smith*,
    629 P.2d 1187 (Mont. 1981) ...................................................... 22, 25

*McDermott v. State Dep't of Corr.*,
    29 P.3d 992 (Mont. 2001) ............................................................... 20

*Mead v. M.S.B., Inc.*,
    872 P.2d 782 (Mont. 1994) ............................................................. 23

*Meech v. Hillhaven W.*,
    776 P.2d 488 (Mont. 1989) ...................................................... 14, 23

*Mont. Media, Inc. v. Flathead County*,
    63 P.3d 1129 (Mont. 2003) ........................................................... 6, 7

*Newman v. Lichfield*,
    272 P.3d 625 (Mont. 2012) ............................................................. 13

*Not Afraid v. State*,
    362 P.3d 71 (Mont. 2015) ............................................................... 12

*Poole v. Poole*,
    1 P.3d 936 (Mont. 2000) ........................................................................... 12, 15

*Satterlee v. Lumberman's Mut. Cas. Co.*,
    222 P.3d 566 (Mont. 2009) ........................................................................... 19

*State v. Dixon*,
    998 P.2d 544 (Mont. 2000) ............................................................................. 6

*State v. Nye*,
    943 P.2d 96 (Mont. 1997) ............................................................................... 6

*State v. Stanko*,
    974 P.2d 1139 (Mont. 1998) .......................................................................... 17

*State v. Watters*,
    208 P.3d 408 (Mont. 2009) ............................................................................. 7

*Stuart v. Dep't of Soc. & Rehab. Servs.*,
    846 P.2d 965 (Mont. 1993) ........................................................................... 16

*Wing v. State*,
    155 P.3d 1224 (Mont. 2007) ........................................................................... 8

**State Statutes**

Mont. Code Ann. § 2–9–111 .............................................................................. 25

Mont. Code Ann. § 2-9-301 ................................................................................ 8

Mont. Code Ann. § 23-2-601 .............................................................................. 10

Mont. Code Ann. § 23-2-654(3) .......................................................................... 21

Mont. Code Ann. § 23-2-702(2) ...................................................................... 10-11

Mont. Code Ann. § 23-2-736(4) .......................................................................... 21

Mont. Code Ann. § 23-2-801 .............................................................................. 10

Mont. Code Ann. § 23-2-822(1) .......................................................................... 21

Mont. Code Ann. § 23-2-822(2) .......................................................................... 11

Mont. Code Ann. § 27-1-725 .............................................................................. 10

Mont. Code Ann. § 27-1-726(1), (2) ................................................................... 21

Mont. Code Ann. § 27-1-726(7) .......................................................................... 11

Mont. Code Ann. § 27-1-752(2) ........................................................................... 8

Mont. Code Ann. § 27-1-752(4) .............................................................. 5, 6, 9, 12, 19

Mont. Code Ann. § 27-1-753(2)  ............................................................................ 13

Mont. Code Ann. § 27-1-753(3)(a) ................................................................... 13, 22

Mont. Code Ann. § 27-6-101  ............................................................................ 25, 26

Mont. Code Ann. § 41-3-423  .............................................................................. 7, 8

Mont. Code Ann. § 41-3-423(2)(a)  ..................................................................... 7, 8

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................. 2

**Other Authorities**

Montana Constitution, Article II, § 4 ................................................................. 19

Montana Constitution, Article II, § 16 ........................................................... 14, 25

2009 MT Laws 331, preamble……………………………………………………….26

## INTRODUCTION

Understanding the inevitable impact of Montana's Recreation Responsibility Act ("the Act") on the success of their claims, Plaintiffs have chosen to attack the legitimacy of the Act rather than distinguish it from this case or argue that it does not apply. Their decision carries with it an enormous burden—Montana law requires that Plaintiffs prove beyond a reasonable doubt that the Act is unconstitutional. They have not and cannot meet this burden with respect to the vagueness and equal protection arguments in their opening brief. The Court should deny Plaintiffs' motion for partial summary judgment, and uphold the Act as valid under the Montana Constitution.

## BACKGROUND

Defendant James Yeager d/b/a Jim Yeager Outfitters ("Yeager") incorporates by reference the facts of this case as described in his summary judgment filings. (*See* Docs. 32, 34.)

Pertinent to this response, despite contending that the Act makes identifying inherent risks a vague and uncertain task, Plaintiffs were able to agree on the inherent risks of float fly fishing at their respective depositions. Plaintiff Rhett McJunkin agreed that: (1) rivers often contain rocks and subsurface features, (2) the river's surface can be choppy, (3) a risk of being on a boat is falling out of the

boat, and (4) a risk of being around water is drowning.  (Yeager's Statement of Disputed Facts ("SDF"), ¶ 1.)

Likewise, Plaintiff Charles McJunkin Jr. noted that the risks one might encounter while floating a river depend on the type of river, the type of boat used, and the weather conditions at the time.  (SDF, ¶ 2.)  When asked to give examples of potentially hazardous river characteristics, he listed rapid water, rocks, and stumps, and stated that such characteristics could cause "distress," a fall from the boat, and drowning.  (SDF, ¶ 3.)  Moreover, Charles McJunkin Jr. noted that he did not recall his father, Charles P. McJunkin ("McJunkin"), wearing a personal floatation device ("PFD") or requiring others to wear one onboard any of the several boats McJunkin owned over the course of his life.  (SDF, ¶ 4.) Nevertheless, Charles McJunkin Jr. stated that he personally chose to wear a PFD on his father's bass boat "[i]f water was rough."  (SDF, ¶ 5.)

## LEGAL STANDARD

### A.   Summary judgment.

Summary judgment is only warranted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing that no genuine dispute exists.  The burden then shifts to the non-

moving party to present affirmative evidence showing the existence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Unless the documentary evidence produced by the parties permits only one conclusion, summary judgment should not be granted.  *Id.* at 251.  Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered.  *Id.* at 248.

In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## B.     Applicable law.

A federal court sitting in diversity applies the substantive law of the forum state to state law claims.  *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).  Thus, Montana law governs the analysis of whether the Act comports with the Montana Constitution.

## C.     Challenging the constitutionality of a statute under Montana law.

Plaintiffs bear a heavy burden in challenging the constitutionality of the Act:

> The constitutionality of a statute is presumed, unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.  The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt.  If any doubt exists, it must be resolved in favor of the statute.

*Goble v. Mont. State Fund*, 325 P.3d 1211, ¶ 15 (Mont. 2014) (citations and internal quotation marks omitted).  "Every possible presumption must be indulged in favor of the constitutionality of a legislative act."  *Id.*  Consequently, "[t]he question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold[,] the legislative action."  *Estate of McCarthy v. Mont. Second Judicial Dist. Court*, 994 P.2d 1090, ¶ 13 (Mont. 1999) (citations omitted).

## <u>ARGUMENT</u>

The Act is neither unconstitutionally vague nor violates the Montana constitutional guarantee of equal protection.  On its face, as a matter of well-established Montana law, the mere fact that the Act leaves the determination regarding inherent risk to the Court does not render it vague.  Moreover, as applied, Plaintiffs readily identified some of the risks inherent in float fly fishing in sworn testimony, undercutting any possible contention on their part that a person of ordinary intelligence cannot understand the Act's key provisions.

Likewise, the Act does not create a class of recreationist-plaintiffs with lesser access to the courts.  For activities where more specific Montana recreation

liability statutes exist, such as skiing and snowmobiling, the Act provides adequate legal redress for negligent acts in the same manner as those statutes.  And the Act does not absolutely foreclose actions based on the negligence of a recreational provider.  Furthermore, even assuming the Act creates a class of plaintiffs with limited access to the courts, rational basis scrutiny applies and does not invalidate the Act.  For these reasons, the Court should deny Plaintiff's motion for summary judgment and uphold the Act.

**A.**     **The Act is not unconstitutionally vague on its face or as applied.**

In conclusory fashion, Plaintiffs claim that the Act is unconstitutionally vague because it "confuses the basic concept of negligence by injecting vague and uncertain terminology that lacks sufficient clarity and definiteness."  (Doc. 29 at 5.)  They claim because the Act does not specifically enumerate the inherent risks of each of the more than thirty activities listed in § 27–1–752(4), "there is no fair way to apply the statute."  (*Id*. at 7.)  Furthermore, according to Plaintiffs, the Act "recasts" the factual question of how an injury occurs as a legal question concerning whether a duty exists under the law.  (*Id*.)

These arguments ignore the law in Montana.  The Court should therefore deny Plaintiffs' motion for summary judgment on vagueness grounds.

**1.**     **The Act is constitutional on its face.**

**a.**     **The definition of "inherent risk."**

The Montana Legislature's decision to refrain from individually listing the risks inherent in the more than thirty different recreational activities included in § 27–1–752(4) does not render the Act unconstitutional on its face.

In Montana, "[a] noncriminal statute or regulation is unconstitutionally vague if a person of common intelligence must necessarily guess at its meaning." *Mont. Media, Inc. v. Flathead Cnty.*, 63 P.3d 1129, ¶ 58 (Mont. 2003) (citing *Broers v. Montana Dept. of Revenue*, 773 P.2d 320, 323 (Mont. 1989)); *In re Custody & Parental Rights of D.S.*, 122 P.3d 1239, ¶¶ 16–17 (Mont. 2005) (citations omitted).

"However, a term is not vague simply because it can be dissected or subject to different interpretations." *Mont. Media, Inc.*, ¶ 58 (citing *Broers*, 773 P.2d at 323). Likewise, "the Legislature need not define every term it employs when constructing a statute. *State v. Dixon*, 998 P.2d 544, ¶ 21 (Mont. 2000) (citing *State v. Nye*, 943 P.2d 96, 101 (Mont. 1997)). "The failure to include exhaustive definitions will not automatically render a statute vague on its face, so long as the meaning of the statute is clear and provides a [party] with adequate notice of what conduct is [affected by the statute]." *Id.*; *see also G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1085 (9th Cir. 2006) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)) ("subjectivity, alone, does not render [a law]

unconstitutionally vague," and lawmakers are "not obligated to provide numerical or otherwise technical definitions of the bounds of compatibility").

Courts are "<u>required</u> to uphold the constitutionality of a statute when that can be accomplished by a reasonable construction of the statute." *Mont. Media, Inc.*, ¶ 58 (emphasis added). "A person challenging [a] statute bears the burden of showing that the statute is 'impermissibly vague in all of its applications.'" *State v. Watters*, 208 P.3d 408, ¶ 32 (Mont. 2009) (citing *Dixon*, ¶ 18). "Thus, a challenger must prove that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Id*. (citation omitted).

In *In re Custody & Parental Rights of D.S.*, the Montana Supreme Court addressed a challenge to Montana Code Annotated § 41–3–423 similar to Plaintiffs' challenge to the Act. The case involved the Montana Department of Health and Human Services' ("DPHHS") action to terminate A.S.'s parental rights to her son, D.S.  122 P.3d 1239, ¶¶ 6–11.  DPHHS argued, and the district court agreed, that "A.S. subjected D.S. to an aggravated circumstance, namely abuse or neglect," and that termination was appropriate. *Id*., ¶ 11. On appeal, A.S. argued that § 41–3–423(2)(a)—which provides that DPHHS may cease efforts to reunify a parent and child if the parent subjected the child to "aggravated circumstances"—

was unconstitutionally vague on its face.  *Id.*, ¶¶ 13–14.  The Montana Supreme

Court ruled in favor of DPHHS on the constitutional question:

> The State argues on appeal, and we agree, that the fact
> that § 41–3–423(2)(a) . . . <u>does not contain an exhaustive</u>
> <u>list of conduct</u> that constitutes an aggravated
> circumstance and that it <u>allows the district courts some</u>
> <u>discretion in determining whether the evidence presented</u>
> <u>merits a finding of an aggravated circumstance</u>, does not
> make the statute unconstitutionally vague.  The United
> States Supreme Court has recognized that <u>even when</u>
> <u>standards contained in a statute are flexible, and officials</u>
> <u>implementing them will exercise considerable discretion,</u>
> <u>perfect clarity and precise guidance are not required</u>.

*Id.*, ¶ 17 (citing *Ward v. Rock against Racism* 491 U.S. 781, 794 (1989)); *see also*

*Wing v. State*, 155 P.3d 1224, ¶¶ 10–15 (Mont. 2007) (finding that though § 2–9–

301 does not define the term "receipt," "a person of average intelligence can

comprehend [the] term of common usage contained in [the] statute").  The Court

ultimately held that § 41–3–423 was constitutional on its face and was not vague.

*Id.*, ¶ 18.

   The above Montana case law compels the conclusion that the Act clearly

and adequately defines the term "inherent risks," and that persons of ordinary

intelligence need not guess at the term's meaning.  Section 27–1–752(2) provides

that "inherent risks" are "those dangers or conditions that are characteristic of,

intrinsic to, or an integral part of any sport or recreational activity and that cannot

be prevented by the use of reasonable care."  "Inherent risks" are thus "dangers" or

"conditions," both of which are undeniably common, readily-understood terms.[1] "Dangers" and/or "conditions" under the Act become "inherent risks" if they are "characteristic of, intrinsic to, or an integral part of" the activity at issue, i.e. they are typical, essential, necessary, or fundamental.[2]  This definition serves as a framework which can be applied to any of the activities listed in § 27–1–752(4).  A typical thing that might cause harm (an inherent risk) in baseball is a flying baseball.  An essential, fundamental danger (an inherent risk) in mountain climbing is falling from an elevated height.  In the same vein, an inherent risk of fishing from a raft on a moving river is falling from the raft into the water and drowning. The statute can be applied to any of the listed activities by persons of ordinary intelligence—and certainly by the Court—by relying on common experiences and understanding of the natural world.  Indeed, Plaintiffs did just that at their depositions, listing numerous risks inherent to float fly fishing and recreating on or near water.  (*See* SDF, ¶¶ 1–5.)

Moreover, pursuant to *Montana Media, Inc.*, *Dixon*, *Nye*, *G.K. Ltd. Travel*, *In re Custody & Parental Rights of D.S.*, and *Wing*, the mere fact that the Montana Legislature opted in its discretion to omit listing specific inherent risks does not present a constitutional infirmity.  Clarity in this regard does not require volume—

---

[1] A "danger" is "a thing that is likely to cause harm or injury," and a "condition" is "the prevailing state of the weather, ground, sea, or atmosphere at a particular time, especially as it affects a sporting event."  (*See* https://en.oxforddictionaries.com/)

[2] *See* https://en.oxforddictionaries.com/.

9

the statute is workable and understandable in its current form, without pages and pages listing all of the things that might cause a participant harm.  Indeed, even if the Legislature chose to include such lists in the Act, a revised hypothetical statute would certainly contain "including but not limited" to language to cover any risks which the Legislature omitted.  Pursuant to *In re Custody & Parental Rights of D.S.*, such language is permissible, and a statute is not unconstitutional because it "allows the district courts some discretion in determining whether the evidence presented" meets a definition in a statute.  122 P.3d 1239, ¶ 17.

Plaintiffs argue that the Act is vague as compared to more specific recreational statutes in Montana, including: (1) the Skier Responsibility Act ("SRA"), § 23–2–702 *et seq.*; (2) the snowmobile liability statutes, § 23–2–601 *et seq.*; (3) the off-highway vehicle liability statutes, § 23–2–801 *et seq.*; and (4) the equine activity statutes, § 27–1–725 *et seq.*  Plaintiffs claim that "where the [L]egislature has chosen to restrict negligence liability by allocating responsibility for certain risks it deems 'inherent' to the sport or activity, it has done so with specificity."  (Doc. 29 at 10.)

However, Plaintiffs fail to acknowledge that, whether pursuant to the plain language of the statutes themselves or judicial construction thereof, the lists of "inherent risks" in the above provisions are non-exhaustive.  *See* § 23–2–702(2) ("'Inherent dangers and risks of skiing' means those dangers or conditions that are

part of the sport of skiing, <u>including</u> . . .") (emphasis added); *Kopeikin v.*

*Moonlight Basin Mgmt., LLC*, 90 F. Supp. 3d 1103, 1107 (D. Mont. 2015)

(rejecting "the notion that a court's only role in ski area liability cases is to inquire

whether the plaintiff's injuries resulted from a collision with a particular object

appearing on the statutory list of inherent risks of skiing"); § 23–2–822(2) ("Risks

inherent in the sport of off-highway operation include variations in terrain, [etc.],

and any other natural hazard.") (emphasis added); § 27–1–726(7) ("'Risks inherent

in equine activities' means dangers or conditions that are an integral part of equine

activities, including but not limited to . . .") (emphasis added).

Moreover, even where one of the above statutes provides specific guidance

on inherent risk, it remains a legal question whether the alleged cause of a

recreationist-plaintiff's injury is one of the listed inherent risks.  In other words,

even when one of Montana's other recreation liability statutes provides examples

or categories of inherent risks, the cause of an injury must nevertheless be likened

to an example or placed within a category.  Judicial determination and discretion

remain with regard to these other statutes, regardless of whether the Legislature

chose to specifically identify inherent risks when it drafted the statutes themselves.

Thus, it is an inaccurate and false comparison to say that these other recreation

liability statutes provide clarity that the Act does not.

Based on the foregoing, the Montana Legislature's decision to provide a framework for evaluating the presence of inherent risks in recreational activities— as opposed to listing the risks inherent in the various activities in § 27–1–752(4)— does not render the Act unconstitutional.  Montana case law permits such flexibility in statutes, and Plaintiffs have not met their burden of proving otherwise beyond a reasonable doubt.

### b.    Inherent risk and the threshold legal question of duty.

Plaintiffs claim that the Act converts factual questions pertaining to reasonable care and causation, to a legal question regarding duty.  However, Plaintiffs ignore that under Montana law, courts resolve the question of duty—in the context of foreseeability—all the time.  Thus, what Plaintiffs claim is a constitutional defect of the Act is actually a common procedural step in negligence cases in Montana.

To establish negligence, Plaintiffs must prove duty, breach, causation, and damages.  *Not Afraid v. State*, 362 P.3d 71, ¶ 13 (Mont 2015).  In Montana, whether a party owes a duty under the circumstances depends on whether the party can foresee the risk created by its allegedly negligent conduct.  *Busta v. Columbus Hosp. Corp.*, 916 P.2d 122, 139 (Mont. 1996); *see Poole v. Poole*, 1 P.3d 936, ¶ 20 (Mont. 2000); *Emanuel v. Great Falls Sch. Dist.*, 209 P.3d 244, ¶ 15 (Mont. 2009) (finding that the defendant school district had no legal duty to protect the plaintiff

from injury by a student because the facts and circumstances of the injury and the student's past were unforeseeable to the defendant).  "Without foreseeability . . . , no duty exists," and "in the absence of duty, there is no negligence."  *Gourneau v. Hamill*, 311 P.3d 760, ¶ 12 (Mont 2013).  Unquestionably, whether a legal duty exists under the circumstances is a question of law for the courts.  *Newman v. Lichfield*, 272 P.3d 625, ¶ 23 (Mont. 2012); *Emanuel*, ¶ 11.

Pursuant to the above, it is entirely consistent with Montana negligence law for courts to address, as a threshold matter, the legal question of whether a duty was owed under the circumstances.  The Act falls in line with this common procedural step.  Section 27–1–753(2) states that "[a] provider is not required to eliminate, alter, or control the inherent risks within the particular sport or recreational opportunity that is provided," i.e. has no duty to mitigate inherent risks.  Importantly, however, pursuant to § 27–1–753(3)(a), the Act does "not preclude an action based on the negligence of the provider if the injury, death, or damage is not the result of an inherent risk of the sport or recreational opportunity."  Thus, the initial legal question before courts under the Act is whether a plaintiff's alleged injuries were caused by an inherent risk or not.  The question is directly analogous to courts determining whether injuries were foreseeable or not.  Just as with foreseeability, so long as "reasonable minds cannot differ" with respect to inherent risk, the question is appropriately answered as a

matter of law by the judge, and does not represent an unconstitutional shortcoming. *Poole*, ¶ 14.  The Montana Legislature is at liberty to modify the common law. *Meech v. Hillhaven W.*, 776 P.2d 488, 494 (Mont. 1989) (holding, in the context of Article II, § 16 of the Montana Constitution, that "as a general proposition, the legislature, under its plenary power to act for the general welfare, may alter common-law causes of action").

Plaintiffs argue that the Act's "lack of clarity" restricts their right to a trial by jury.[3]  (Doc. 29 at 8.)  Plaintiffs have not yet responded to Yeager's motion for summary judgment, in which Yeager argues that McJunkin's death was the result of an inherent risk of float fly fishing.  However, consistent with their deposition testimony, Yeager anticipates that Plaintiffs will argue he was negligent because he failed to require McJunkin to wear a PFD, and that his negligence—not an inherent risk of float fly fishing—caused McJunkin's death.  (SDF, ¶ 6.)

This expected argument is precisely the distinction that keeps the courthouse open to plaintiffs in recreational liability cases, and renders the Act constitutional on its face.  The Act does not absolve providers of liability for their own negligence, so long as the provider's negligence is actually the cause of the plaintiff's injury.  In this connection, the Act does <u>not</u> suffer from the same

---

[3] Though Plaintiffs contend as part of their vagueness argument that the Act is "deserving of the highest level of court scrutiny," (Doc. 29 at 8), pursuant to the cases cited in the previous section of this brief, whether a statute is unconstitutionally vague does not involve the application of strict, intermediate, or rational basis scrutiny.

constitutional infirmity recognized in the version of the SRA struck down by the Montana Supreme Court in *Brewer v. Skilift, Inc.*, 762 P.2d 226, 230–31 (Mont. 1988). The version of the SRA at issue in *Brewer* provided that skiers assumed <u>all</u> liability for injury incurred while skiing, regardless of the cause, and the Montana Supreme Court determined that the offending "provisions eliminate any theory of negligence on the part of the ski area operator." *Id.*

The Act, on the other hand, simply prescribes that in order to maintain an action in negligence, a plaintiff in a recreational liability case must prove that his injury was caused by the provider's negligence, not by an inherent risk of the activity. The Act does not "eliminate any theory of negligence on the part of the [provider]"—it specifies that the provider must have been the cause of the plaintiff's injury. If the plaintiff meets his burden in this regard, then the Act has no effect on his ability to maintain the action. And pursuant to *Poole*, where the evidence reasonably leads to one conclusion, the Court can answer these questions at the outset. 1 P.3d 936, ¶ 14. Contrary to Plaintiffs' assertion, the Act bears no resemblance to the statute at issue in *Brewer*, which had the effect of cutting off all legal recourse for injured skiers.[4]

---

[4] For these same reasons, Plaintiffs' statement that Yeager's "expert intends to use the [Act] to exculpate Yeager . . . because, in his view, any death on the river can be attributed to inherent risk," is wildly overbroad. (Doc. 29 at 5.) Yeager does not contend that every injury on the river is attributable to an inherent risk, just that the specific circumstances of McJunkin's death— falling out of the raft, despite no alleged operator error, and drowning—demonstrate inherent risk.

Based on the foregoing, Plaintiffs have not met their high burden of proving beyond a reasonable doubt that the Act is unconstitutionally vague on its face. The Act does not impermissibly "recast" fact questions as legal questions, and does not restrict Plaintiffs' ability to bring an action against Yeager. The Court should deny Plaintiffs' motion for summary judgment on this ground.

**2.      The Act is constitutional as applied to Plaintiffs and to McJunkin.**

Plaintiffs do not specifically analyze how the Act is unconstitutional as applied to them or to McJunkin. They do not allege or attempt to prove in any way the requisite elements of an as-applied vagueness challenge. Nevertheless, even if they had, there is no evidence that the Act is unconstitutional as applied to Plaintiffs or McJunkin. On the contrary, the record evidence in this case suggests Plaintiffs and McJunkin understood the risks inherent in boating and float fly fishing, and would understand that the Act limits Yeager's liability for accidents on the river.

An as-applied constitutional vagueness challenge tests whether the statute in question is vague with respect to the particular experience of the party challenging the statute—not to the hypothetical experiences of others. *Stuart v. Dep't of Soc. & Rehab. Servs.*, 846 P.2d 965, 970–71 (Mont. 1993) (citing *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982)). "When faced with a vague-as-applied challenge to a statute, [courts] determine whether the challenged statute

16

provides a person with actual notice and whether the statute provides minimal guidelines to law enforcement." *Watters*, ¶ 32 (citing *Dixon*, ¶ 27). "To determine whether the statute provides actual notice, [courts] examine the statute in light of the [challenger's] conduct to determine if the [individual] reasonably could have understood that the statute [affected] such conduct." *Id*. (citing *Dixon*, ¶ 28.) However, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain [conduct] fall[s] within their language." *State v. Stanko*, 974 P.2d 1139, ¶ 59 (Mont 1998) (citations omitted).[5]

Based on Plaintiffs' experiences and testimony and McJunkin's own history of boating, each would have understood the inherent risks in float fly fishing and the consequent limitations of the Act. Both Rhett McJunkin and Charles McJunkin Jr. readily identified in deposition testimony some of the hazards of float fly fishing and the potential injuries a participant could sustain as a result of them. (*See* SDF, ¶¶ 1–5.) Thus, Plaintiffs cannot reasonably claim to be personally confused by the concept of inherent risk—under oath, they did not hesitate to name the risks inherent to the activity at issue in this case. Likewise, Plaintiffs testified that McJunkin himself had owned and operated boats for decades before his death, and it is undisputed that he had fished with Yeager on the Stillwater River for twenty years. (*Id*.) As a matter of law, the Court can conclude that McJunkin

---

[5] Montana case law discussing as-applied vagueness challenges overwhelmingly pertains to criminal cases, but is nevertheless instructive.

would have understood the risks inherent in boating in general, and in float fly

fishing the exact stretch of river where the accident took place.

Based on the foregoing, though Plaintiffs articulate no specific vague-as-

applied argument in their brief, the evidence in this case is insufficient to support a

declaration by the Court that the Act is unconstitutional as applied to Plaintiffs

beyond a reasonable doubt.  Accordingly, the Court should deny Plaintiffs' motion

for summary judgment on this ground.

**B.     The Act does not deny recreationists equal protection under the Montana Constitution.**

Plaintiffs appear to make two different classification-based arguments

regarding access to the courts in their equal protection claim.  First, Plaintiffs

contend that the Act treats recreationists participating in activities covered by the

Act differently than those participating in activities covered under other specific

recreation liability statutes, such as the SRA or the snowmobile liability statutes.

Second, Plaintiffs contend that the Act violates equal protection because it treats

recreationists differently than other members of the population.  They claim that

the Act is unconstitutional because it generally restricts the rights of recreationists

to legal redress.  Plaintiffs then argue that these purportedly disparate

classifications are not "rationally related to the goal of the [Act]," indicating their

understanding that rational basis scrutiny controls the analysis.  (Doc. 29 at 17.)

18

Plaintiffs' arguments are strained, and do not clear the bar of proving the Act unconstitutional beyond a reasonable doubt.  Recreationist-plaintiffs participating in the activities listed under § 27–1–752(4) are no less able to obtain legal redress than recreationists participating in activities covered by Montana's other recreation liability statutes, mentioned in the previous section.  Nor are they substantially less able to obtain legal redress than the public at large.  Consequently, the Act does not treat recreationists differently, and there is no basis for an equal protection claim. Furthermore, even assuming the Act does treat recreationist-plaintiffs subject to it differently, the classification and differing treatment are rationally related to a legitimate government purpose.

### 1.    Legal framework.

Equal protection of the law is guaranteed by Article II, Section 4 of the Montana Constitution.  "The rule of equal protection is that persons similarly situated should receive like treatment."  *Blehm v. St. John's Lutheran Hosp., Inc.*, 246 P.3d 1024, ¶ 23 (Mont. 2010) (citing *Satterlee v. Lumberman's Mutual Cas. Co.*, 222 P.3d 566, ¶ 15 (Mont. 2009)).  "Resolution of an equal protection challenge to a statute is determined by identifying the classes of persons involved; by determining the appropriate level of scrutiny; and applying the appropriate level of scrutiny to the situation involved."  *Id*. (citing *Satterlee*, ¶¶ 15–18).

The guarantee of equal protection "does not preclude [Montana] from enacting legislation that treats certain people differently, but it does prohibit [the state] from according different treatment to persons on the basis of a classification that is wholly unrelated to some legitimate state purpose." *McDermott v. State Dep't of Corr.*, 29 P.3d 992, ¶ 30 (Mont. 2001) (citations omitted).

"Unless the classification touches on a fundamental right (such as religious freedom, freedom of speech or association, privacy or right to travel), or is drawn upon an inherently suspect distinction (such as race, religion or alienage), <u>the constitutionality of the statutory discrimination is presumed</u>; the only requirement being that the classification be rationally related to a legitimate state interest." *Bieber v. Broadwater Cnty.*, 759 P.2d 145, 147–48 (Mont. 1988) (citing *New Orleans v. Dukes*, 427 U.S. 297 (1976)) (emphasis added). "'Rationally related' means that the classification will be upheld if it has <u>any</u> rational basis." *Id.* at 148 (citations omitted) (emphasis added).

    **2.    The Act, when compared with other recreational activity statutes in Montana, does not create different classes of recreationists.**

As discussed above, the Act is similar to other recreation liability statutes in Montana—including the SRA and the snowmobile, off-highway vehicle, and equine activity statutes—in that each leaves some determination to the courts with regard to duty and inherent risk.

In addition, and contrary to Plaintiffs' argument, the Act is also similar to these other statutes in that each provides that the participant assumes the risks inherent in the particular activity and/or limits a provider's liability with respect to inherent risks.  *See* § 23–2–736(4) ("A skier shall accept all legal responsibility for injury or damage [which] results from inherent dangers and risks of skiing . . ."); § 23–2–654(3) ("A snowmobiler shall accept all legal responsibility for injury or damage of any kind to the extent that the injury or damage results from risks inherent in the sport of snowmobiling."); § 23–2–822(1) ("An off-highway vehicle operator shall accept all legal responsibility for injury or damage [which] results from risks inherent in the sport of off-highway vehicle use and shall regulate personal conduct . . . so that injury [which] results from the risks inherent in the sport of off-highway vehicle operation is avoided."); § 27–1–726(1), (2) ("an equine activity sponsor or an equine professional is not liable for an injury to or the death of a participant engaged in an equine activity resulting from risks inherent in equine activities," and "[a]n equine participant shall . . . be aware of risks inherent in equine activities").

In light of the foregoing, the Act does not create a class of recreationists with limited legal redress as compared to recreationists covered under the above-cited statutes.  Whether pursuant to the Act, the SRA, or the snowmobile, off-highway vehicle, or equine activity statutes, in Montana, recreationist-plaintiffs bear the

21

responsibility for injuries caused by inherent risks.  Laws "which operate[] in the same manner upon all persons in like circumstances [are] not 'special' in the constitutional sense[,] nor . . . violative of equal protection." *Linder v. Smith*, 629 P.2d 1187, 1193 (Mont. 1981).  Coupled with the Act's permissible, sufficiently detailed definition of "inherent risks" discussed above, the Act does not violate equal protection as between participants in different recreational activities.  To the extent Plaintiffs' equal protection claim is premised on this non-existent classification, their claim fails and the Court should deny Plaintiffs' motion for summary judgment.

### 3.    The Act does not treat recreationists differently than members of the public with respect to legal redress.

As noted with respect to Plaintiffs' vagueness argument, the Act does not limit the ability of a recreationist-plaintiff to obtain legal redress as compared to a plaintiff in a standard negligence case, i.e. a case that does not implicate the Act. Plaintiffs' assertion otherwise ignores that the Act only limits a provider's liability when an inherent risk leads to injury.  Indeed, § 27–1–753(3)(a) explicitly provides that the Act "do[es] not preclude an action based on the negligence of the provider if the injury, death, or damage is not the result of an inherent risk of the sport or recreational opportunity."

The Act does not foreclose any theory of negligence against a provider, as did the version of the SRA struck down in *Brewer*.  Instead, at the very most, the

Act adds an additional analytical step with respect to the duty element, which a recreationist-plaintiff may satisfy if the provider's negligence in fact caused his injuries.  Because statutory modifications to the common law "which affect the form but not the substance of the right [to a jury trial] may pass constitutional muster," the Montana Legislature's decision to include this additional step is permissible and does not create a separate class of plaintiffs for equal protection purposes.  *Hammer v. Justice Court*, 720 P.2d 281, 282 (Mont. 1986).  Recreationist-plaintiffs whose claims are subject to the Act are afforded equal access to the courts as other tort plaintiffs.

Nor does the Act impermissibly revive assumption of the risk and contributory negligence, as Plaintiffs incorrectly allege.  Plaintiffs quote *Mead v. M.S.B., Inc.*, 872 P.2d 782, 791 (Mont. 1994), for the proposition that "the defense of assumption of risk . . . is not a separate defense in a claim by [a participant] for injuries which are alleged to result from the negligence of [a provider]."  (emphasis added).  However, the *Mead* court specifically held that the defense is not available "other than as specified in the Skier Responsibility Act."  *Id.*

This is precisely Yeager's point.  The *Mead* court recognized the Legislature's prerogative to change the common law, in that case by codifying in the context of skiing a defense no longer available in common-law negligence actions.  872 P.2d at 791; *see Meech*, 776 P.2d at 494.  Applied here, assuming the

Act does codify the defense of assumption of risk, it is well within the
Legislature's discretion to render it applicable in the recreational liability context.
Moreover, interpreting the above-quoted holdings from *Mead*, assumption of the
risk and inherent risk are coterminous.  Under the SRA, if an inherent risk caused
the plaintiff's injuries, then assumption of the risk applies.  If the ski area's (or
provider's) negligence caused the injuries, then it does not.  The Act is consistent
with *Mead* in this regard, not contrary to it.

Based on the foregoing, the Act does not create separate class of
recreationist-plaintiffs with inferior rights of access to the court as compared to
plaintiffs in standard negligence actions.  Because the Act does not classify on
these grounds, it does not violate equal protection and should be upheld by the
Court.

### 4. Even assuming the Act does treat recreationists differently, the distinction is rationally related to a legitimate government purpose.

Yeager contends that the Act does not create a separate class of plaintiffs,
either as compared with plaintiffs in cases under Montana's other recreation
liability statutes or with plaintiffs in a standard negligence case.  However, even if
the Act did create a distinct class, the classification is rationally related to the
legitimate state interest of protecting the recreation industry, a significant source of
revenue in Montana.

As an initial matter, pursuant to well-settled Montana law, a classification which burdens the right to access the courts must withstand only the rational basis test.  While Article II, § 16 of the Montana Constitution guarantees legal redress, "access to the courts is not an independent fundamental right."  *Bieber*, 759 P.2d at 148.  Consequently, rational basis review applies when a statute is alleged to have breached Article II, § 16 in violation of equal protection of the laws.

Numerous Montana cases have confirmed as much.  For example, in *Bieber*, the Montana Supreme Court upheld § 2–9–111, which bars recovery against a county legislative body and/or its staff for legislative acts.  *Id*.  The Court held, notwithstanding Article II, § 16, that the Montana Legislature's determination "to insulate a decision or law making body from suit in order to prevent its decision or law making processes from being hampered or influenced by frivolous lawsuits" survives rational basis review.  *Id*.

Likewise, in *Linder v. Smith*, 629 P.2d 1187, 1190 (Mont. 1981), the Montana Supreme Court upheld § 27–6–101 *et seq.*—the statutes creating the Montana Medical Legal Panel ("MMLP")—as constitutional.  Indicating that it had "upheld various other legislative enactments which delay or burden the right of access [to the courts]," the Court ruled that the MMLP statutes did not violate the right to a jury trial because the "[c]laimant gets a full and final determination of his

25

claim in a jury trial setting," albeit after "submitting his claim to the panel." *Id*. at 1190–91.

Here, to the extent the Act creates a separate class of plaintiffs with limited access to the courts, the classification is rationally related to a legitimate state interest. The preamble to the 2009 bill presenting the Act stated in pertinent part that "the state has a legitimate interest in maintaining the economic viability of the sports and recreational industries by discouraging claims based on damages resulting from risks inherent in a sport or recreational activity," and that "the liability of providers of recreational opportunities should be limited to negligence that is not associated with the inherent risks of a sport or recreational activity." 2009 MT Laws 331, preamble. The purposes of the Act include: (1) ensuring "that providers are not put in the position where they have to control absolutely everything that happens in the field, in their activity"; and (2) protecting the viability of the recreation industry by easing the cost burden on providers of purchasing liability insurance. (*See* Doc. 32 at 14–15.)

The Legislature has a legitimate interest in preserving and protecting one of the state's largest industries and revenue generators, and the Act is rationally related to that interest. The Act does not absolutely exculpate providers, but instead mandates that when a participant is injured by the very characteristics of the activity which made it desirable in the first place, the provider is not liable.

26

Indeed, the provider has no obligation to mitigate those characteristics—doing so would make the activity less adventurous, less desirable.  The ends pursued by the Montana Legislature therefore justify the statutory means.  To the extent the Act creates a distinct class of plaintiffs, the classification is rationally related to a legitimate government purpose, and therefore constitutional as a matter of law. The Court should deny Plaintiffs' motion for summary judgment on equal protection grounds.

## CONCLUSION

Montana courts presume the constitutionality of the laws of this state, and are required to uphold those laws if amenable to a reasonable construction. Plaintiffs' must overcome this presumption with proof beyond a reasonable doubt of a constitutional infirmity.  They have failed to do so here.  The Act is neither unconstitutionally vague nor deprives litigants equal protection of the laws.  The Court should therefore uphold the Act and deny Plaintiffs' motion for summary judgment.

DATED this 5th day of March, 2018.

/s/ John M. Newman
John M. Newman
BOONE KARLBERG P.C.
*Attorneys for Defendant James Yeager d/b/a Jim Yeager Outfitters*

27

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief, excluding the caption, table of contents, table of authorities, certificate of compliance, and signature block, contains 6,496 words, as calculated by the word-processing software used to draft the brief, and utilizes a proportionately-spaced Times New Roman font of 14 points.

/s/ John M. Newman
John M. Newman
BOONE KARLBERG P.C.
*Attorneys for Defendant James*
*Yeager d/b/a Jim Yeager Outfitters*